UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| SEANTAI SUGGS, BOBBY SUGGS | ) | |
| | ) | |
| v. | ) | Nos. 2:06 CV 7, 2:06 CV 10 |
| | ) | (arising from No. 2:01 CR 98) |
| UNITED STATES OF AMERICA | ) | |

### O R D E R

Seantai Suggs (2:06 CV 7) and Bobby Suggs (2:06 CV 10), brothers and codefendants, have both filed motions to vacate their sentences and convictions pursuant to 28 U.S.C. § 2255.[1] A motion under § 2255 allows a federal prisoner "in custody . . . claiming a right to be released" to attack his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction . . ., or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 ¶ 1. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." RULE 4,

---

[1] On June 23, 2005, Seantai Suggs filed a motion requesting a transcript of a hearing held on July 9, 2002, concerning his request, prior to his criminal trial, to be appointed a new attorney. Because that hearing was never transcribed and because Seantai had no § 2255 motion pending, he needed to order the transcript from the court reporter at his own expense. *See* 28 U.S.C. § 753(f); *United States v. MacCollom*, 426 U.S. 317, 96 S. Ct. 2086, 48 L. Ed. 2d 666 (1976). In his motion he gave no reason why he needed the transcript, and he has filed his § 2255 motion without mentioning the transcript request or the July 9, 2002, hearing at all. Accordingly, the June 23, 2005, motion is now **DENIED**.

RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS.

With only one difference, the motions filed by Seantai and Bobby Suggs raise the same issues, and the supporting memoranda are virtually verbatim copies. For this reason, the court will address the motions jointly in this memorandum, referring to the brothers as "the Suggses," and using their first names when it is necessary to identify them individually.

On July 31, 2002, a jury found the Suggses guilty of conspiracy to possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 846. Both were also found guilty of additional charges. Bobby was found guilty of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1); and three counts of using a telephone to facilitate a drug-trafficking crime in violation of 21 U.S.C. § 843(b). Seantai was found guilty of two counts of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1); one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1); and one count of using a telephone to facilitate a drug-trafficking crime in violation of 21 U.S.C. § 843(b).

The court sentenced Bobby on October 29, 2002, to a term of imprisonment for life on the conspiracy conviction, and 48 months on each of the other charges, to be served concurrently. Seantai was sentenced on December 10, 2002, to a term of imprisonment for life on the conspiracy conviction, 48 months on the telephone facilitation charge, 240 months on one of the distribution charges, and 480 months on

the other distribution charge and the possession with intent charge, all to be served concurrently. The Suggses both took direct appeals, and their convictions and sentences were affirmed. *United States v. Suggs*, 374 F.3d 508 (7th Cir. 2004). Their petitions for *certiorari* were denied on January 10, 2005. *Suggs v. United States*, 543 U.S. 1079, 125 S. Ct. 939, 160 L.Ed.2d 822 (2005). Both timely filed their § 2255 motions within one year thereafter.

The Suggses raise a claim of ineffective assistance of counsel, based on seven grounds. First, that their attorneys failed to file a motion seeking to suppress evidence and contesting the validity of the search warrants pursuant to which the evidence was seized. Second, that their attorneys failed to move to dismiss the indictment because it was obtained via perjured testimony presented to the grand jury. Third, that their attorneys failed to object to the court submitting an erroneous special verdict form to the jury. Fourth, that their attorneys failed to request a limiting instruction on evidence of the Suggses' affiliation with a street gang, the Concord Affiliated (often referred to by the abbreviation "CCA," which the court will use in this order). Fifth, Bobby argues that his attorney failed at sentencing to object to the court's findings, based on a preponderance of the evidence, concerning drug quantities used to calculate his sentences under the United States Sentencing Guidelines ("Guidelines"). Seantai's fifth argument is that his attorney failed to submit his objections to the presentence report in a timely fashion, which resulted in the court ignoring them entirely. Sixth, that their attorneys failed, at sentencing, to argue that the government had improperly

3

prolonged its investigation in order to increase their sentences. Seventh, and last, that an attorney who jointly represented them on appeal was ineffective for not raising and preserving the drug-quantity/sentencing issue pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

     To establish that they received ineffective assistance of counsel, the Suggses must satisfy a two-pronged test, establishing both deficient performance by the attorney, and prejudice resulting therefrom. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Establishing a deficient performance is difficult, because the Suggses must show that the errors made were so serious that they were deprived of "counsel" within the meaning of the Sixth Amendment, in the face of a strong presumption that counsel rendered adequate assistance and made significant decisions in the exercise of his reasonable professional judgment. *Id.,* 466 U.S. at 690, 104 S. Ct. at 2066. If a deficient performance is established, the Suggses must then establish prejudice, that is, a reasonable probability that, were it not for the attorney's mistakes, the proceeding would have had a different outcome. *Id.*, 466 U.S. at 694, 104 S. Ct. at 2052. If the court decides that an insufficient showing has been made on either prong of the test, then the ineffective-assistance claim should be denied. *Id.,* 466 U.S. at 697, 104 S. Ct. at 2069.

     Although the Suggses have raised seven different issues, each of which they believe establish ineffective assistance, it must be kept in mind that:

4

> [I]neffective assistance of counsel is a single ground for
> relief no matter how many failings the lawyer may have
> displayed. Counsel's work must be assessed as a whole; it is
> the overall deficient performance, rather than a specific
> failing, that constitutes the ground of relief.

*Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005) (citing *Bell v. Cone*, 535 U.S. 685, 697 (2002); *Strickland*, 466 U.S. at 690; *Holman v. Gilmore*, 126 F.3d 876, 881-84 (7th Cir. 1997)). Thus, while the court addresses each issue raised by the Suggses individually, it is counsel's performance as a whole that must be judged.

Taking the issues in the order that the Suggses raise them, they argue first that their attorneys were ineffective for failing to move to suppress evidence and for failing to request a *Franks*[2] hearing to challenge the validity of the search warrants by which the evidence was obtained. Although the Suggses devote nearly eight pages to legal argument, explaining at some length the importance of determining whether evidence has been lawfully seized, and the circumstances in which a defendant is entitled to a *Franks* hearing, there is not a single allegation of any fact suggesting that the warrants and/or seizures were improper. The closest the Suggses get is to argue that because their attorneys did not conduct an adequate investigation and air all of the facts at a suppression and/or *Franks* hearing, and highly prejudicial evidence was introduced at trial, it is impossible to tell now exactly what prejudice they suffered: "Due to the magnitude of the aforementioned, petitioner cannot ascertain the taint of the evidence,

---

[2] *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

5

therefore an evidentiary hearing is warranted." Bobby's Memorandum in Support at 11; Seantai's Memorandum in Support at 12.

Essentially, the Suggses are arguing that their trial counsel should have used the hearings as fishing expeditions and are requesting to do the same now. The vague suggestion that a thorough investigation and/or evidentiary hearing might reveal something amiss with the warrants and evidence seized is not enough to pass the first prong of the *Strickland* test. *See United States v. Herrera-Rivera*, 25 F.3d 491, 496 (7th Cir, 1994); *see also Williams v. Washington*, 59 F.3d 673, 684 (7th Cir. 1995) ("failure to investigate cannot be used as a substitute for proof of prejudice"). Without any explanation or argument by the Suggses as to what was wrong with the search warrants or the seizures pursuant thereto, they raise not even a slight hint of ineffective assistance of counsel.

Second, the Suggses argue that their attorneys were ineffective for failing to move to dismiss the indictment because perjured testimony was presented to the grand jury. When the government knowingly presents inaccurate information to the grand jury, the court can dismiss the indictment:

> "only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *United States v. Brooks*, 125 F.3d 484, 497 (7th Cir. 1997) (*quoting Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988)) (internal quotations omitted); see also *United States v. Geisler*, 143 F.3d 1070, 1072 (7th Cir. 1998). In other words, "[a] district court may not dismiss an

6

> indictment for errors in grand jury proceedings unless such
> errors prejudiced the defendants." *Brooks*, 125 F.3d at 497
> *(quoting United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct.
> 938, 89 L.Ed.2d 50 (1986)).

*United States v. Vincent*, 416 F.3d 593, 600 (7th Cir. 2005).

The Suggses point to Special Agent Bradley Bookwalter's testimony in the grand jury. Agent Bookwalter testified that Michael Carter, who became a codefendant, had made a statement to him concerning an arson in which two children were killed. Carter's statement, reporting what other CCA members had said to him and what he observed, was to the effect that other members of the CCA carried out the arson at Bobby Suggs' direction, as retaliation against the occupant of the residence for calling the police and reporting the gang's drug-dealing activities in her neighborhood. The Suggses argue that this testimony was presented to the grand jury purely to obtain their indictments via its emotional bombast, because the government already had evidence in its possession showing that the fire was the result of "careless smoking," not arson, consistent with testimony at trial showing that no one was ever charged with arson and, concomitantly, that Bobby Suggs had no involvement.

The evidence that the Suggses point to in order to show that the government already knew, when Bookwalter testified in the grand jury, that the fire was caused by careless smoking, is a Gary Fire Department arson investigation report dated the day after the fire. The report states that although two dogs were used to sniff for accelerants, the investigators "could not find any concluding evidents [sic] that and

7

[sic] outside source or agent was pourd [sic] on the interior or the exterior of this apartment," and that "the ignition source might have been careless smoking materials." The report concluded that the origin of the fire was "undetermind [sic] pinning [sic–pending] futher [sic] investigation." Obviously, this report establishes neither that the government knew that the fire was not arson nor that arson was in fact not the cause.

In addition, the court fails to understand how the Suggses believe that the testimony at trial indicates that the fire was not arson and that Bobby had no involvement with it. As the Court of Appeals noted in affirming the convictions, the government offered evidence at trial that other members of the CCA/conspiracy "purportedly acting on orders from Bobby {Suggs], committed a violent reprisal against a local citizen who had called the police about drug activity in the neighborhood." *Suggs*, 374 F.3d at 514. To provide one example from the evidence at trial, Michael Carter testified that he saw other members of the CCA (Bobby Davis, Eddie Dupries, "Shorty Rough" and "Pee Wee") carrying a Carlos Rossi wine jug filled with gasoline, and they told him that Bobby Suggs had told them to "burn Cheryl [Bridgewater] out the house." Tr. Vol. III at 46.

For the reasons just stated, the court does not believe that the Suggses have demonstrated that false testimony was used to obtain their indictments. But even were this not the case, that is, assuming that the grand jury did hear false evidence, as noted above an indictment cannot be dismissed unless it is established that the false

8

evidence substantially influenced the grand jury's decision to indict or if the court has grave doubt that the decision to indict was free from the substantial influence from the violation. *Vincent*, 416 F.3d at 600. Given the overwhelming evidence of the Suggses' connection to the drug crimes charged, the court does not believe that the grand jury was swayed to indict because of the emotional impact of the evidence concerning the fire, which means that the Suggses suffered no prejudice from their attorney's failure not to seek dismissal of the indictment.

Arriving at the same conclusion for a slightly different reason, the rationale for the rule protecting defendants from the use of perjured testimony in the grand jury is to prevent the indictment and trial of innocent persons. *Id.* at 601-602. When, as here, a petit jury finds a defendant guilty of the crimes charged beyond a reasonable doubt, any error that occurred in the grand jury is harmless. *Id*. Once again, this means that the Suggses cannot show that their attorneys' failure to raise the grand jury issue resulted in prejudice. To summarize, the Suggses have not shown the court that the grand jury heard any perjured testimony and, even if the testimony they point to was false, they have not shown that their attorneys' failure to raise the issue caused any prejudice. Thus, they have not identified any viable ground on which to base an ineffective assistance of counsel claim.

Third, the Suggses argue that their attorneys failed to object to the court's use of an improper special verdict form on the charge of conspiracy to possess with intent to distribute 50 grams or more of cocaine base. The Suggses argue that the verdict form

9

used by the court was erroneous because it did not require the jury to unanimously agree on only one drug quantity under 21 U.S.C. § 841(b)(1)(A). Instead, it instructed the jury to place a check mark "next to any of the following propositions upon which you unanimously find beyond a reasonable doubt," and the jury placed a check mark next to both "[t]he object of the conspiracy involved fifty (50) grams or more of cocaine base," and "[t]he object of the conspiracy involved five (5) grams or more of cocaine base." The Suggses argue that their attorneys should have objected to the jury being allowed to select the same substance twice.[3]

This is not an inconsistent verdict or erroneous verdict form, and the Suggses fail to explain how it caused any prejudice. A conspiracy involving 50 grams or more of crack cocaine necessarily also involves 5 grams or more of that substance. Thus, the jury's verdicts on the conspiracy charge would have been inconsistent if the jury had checked 50, but not checked 5. All that really matters here is that the jury unanimously agreed on the largest quantity, which exposed the Suggses to the maximum statutory penalty. Thus, the Suggses have not shown that their attorneys' failure to object to the special verdict form provides any basis for an ineffective assistance of counsel claim.

---

[3] The Suggses' argument here stems in part from a mistake on their part regarding the special verdict form submitted to the jury. The form the Suggses have attached to their motions is a draft that was passed out at the court's instruction conference, which did instruct the jury to select only one quantity. However, the form ultimately used instructed the jury to place a check mark next to any quantity on which they unanimously agreed. Thus, the jury did not, as the Suggses believe, disregard the instructions on the form.

Fourth, the Suggses argue that their attorneys were ineffective for failing to request a limiting instruction on the evidence of the Suggses' affiliation with the CCA. In their direct appeals, the Suggses raised the issue whether the court erred by not giving this instruction. The Court of Appeals held that it was not plain error for the court to fail to give this instruction *sua sponte*, commenting that it was "very possible that Defendants' lack of a request for such an instruction was a tactical decision to avoid emphasizing gang membership," *Suggs*, 374 F.3d at 518, a possibility strongly suggested by the fact that not one of three capable defense attorneys requested the instruction. Thus, the Suggses cannot overcome the strong presumption that their attorneys were pursuing a sound trial strategy.[4] *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Cosby v. Sigler*, 435 F.3d 702, 707 (7th Cir. 2006). In addition, given the substantial evidence of the Suggses' guilt, the court does not believe that any prejudice could have resulted from the failure to give a limiting instruction on the gang-affiliation evidence.

Fifth, Bobby argues that his attorney failed at sentencing to object to the court's findings, based on a preponderance of the evidence, concerning drug quantities used to "trigger a higher statutory penalty range." Bobby's Memorandum in Support at 20.

---

[4] Citing *Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471(2003), the Suggses assert that their attorneys "cannot hide behind the shield of strategy." Bobby's Memorandum in Support at 18; Seantai's at 19. In *Wiggins* the Court found that counsels' decision not to investigate mitigating evidence in a capital sentencing case was objectively unreasonable on the basis of prevailing professional norms, and so could not be justified as a strategic decision. This is far different from the present case, where a decision not to emphasize gang affiliation by requesting a limiting instruction is an objectively reasonable and competent strategy.

11

As noted above, the jury found Bobby guilty of a conspiracy involving 50 grams or more of cocaine base, which exposed him to a penalty of up to life in prison. 21 U.S.C. § 841(b)(1)(A)(iii). Thus, Suggs's reference to the "statutory penalty range" can only mean that he is referring to the range under the Sentencing Guidelines, not 21 U.S.C. § 841.

By doing so, it is clear that Suggs is relying on *Blakley* and *Booker*, and at the time he was sentenced, neither case had been decided. When Suggs was sentenced, this court was not alone in thinking that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L. Ed. 2d 435 (2000), impacted the statutory penalty ranges under § 841, but did not apply to the calculation of Sentencing Guidelines ranges for those penalties. In other words, Suggs is arguing that his attorney was ineffective at sentencing for not anticipating *Blakely*, and the Court of Appeals has called ineffective-assistance arguments in this vein untenable. *Fuller v. United States*, 398 F.3d 644, 650 n. 4 (7th Cir. 2005) (*quoting United States v. Smith,* 241 F.3d 546, 548 (7th Cir. 2001)). This is because "[t]he Sixth Amendment does not require counsel to forecast changes or advances in the law." *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir.1993); *see also Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001).

Seantai's fifth argument is that his attorney's objections to the presentence report, summarized by the probation officer in a second addendum, were untimely which resulted in the court completely ignoring them. The sentencing transcript completely disproves this assertion. Seantai's counsel made five objections: 1) to the

12

sufficiency of the evidence of the offense conduct; 2) to the firearms adjustment under Guidelines § 2D1.1)b)(1); 3) to the drug type and quantity; 4) to the leadership adjustment under Guidelines § 3B1.1(b); and 5) to the imposition of a fine. The court heard arguments from counsel on each of these issues and addressed them all, overruling all but the last.

Sixth, the Suggses argue that their attorneys were ineffective at sentencing for failing to object that the government had improperly prolonged its investigation in order to increase their sentences, citing *United States v. Garcia*, 79 F.3d 74 (7th Cir. 1996). They assert that it was improper for the government to begin its investigation in 1996 and not seek to indict until 2001.

This skeletal argument is entirely unconvincing. The conspiracy charged in this case was large and complex: the government ultimately brought indictments against 18 conspirators and there were more who were not charged. The Suggses do not explain why it was unreasonable for the investigation to take as long as it did, to ensnare as many participants as possible. Besides that point, *Garcia*, the case the Suggses rely on, holds that the claim of sentencing manipulation that the Suggses are making is not available in this circuit. *Garcia*, 79 F.3d at 76 ("In short, the Constitution does not protect a criminal from himself by requiring the government to arrest the criminal before he commits another crime.") Thus, the Suggses attorneys were not ineffective for failing to raise this issue.

Finally, the Suggses argue that an attorney who filed a consolidated brief on their behalf on appeal was ineffective for not raising and preserving the drug-quantity/sentencing issue pursuant to *Blakely*. Although, the Suggses' appeals were argued in February, 2004, before *Blakely* was issued in June of that year, they were decided a month after *Blakely*. One week after the Suggses' appeals were decided, the Court of Appeals applied *Blakely* to hold that judicially-determined facts that increase a defendant's sentence under the Guidelines violate the sixth-amendment right to a jury trial. *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004). The Suggses argue that their attorney should have raised *Blakely* in a supplemental brief prior to their appeals being decided, and/or along with the appellate decision in *Booker* in a petition for rehearing that he did file, instead of taking the position (because of his ineffectiveness, according to the Suggses) that *Booker* would first need to be decided by the Supreme Court, and then the issue raised in the district court if appropriate. The Suggses compare themselves to one of their codefendants, Terraun Price, who in a separate appeal did obtain a limited remand pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), because, according to the Suggses, his attorney filed a supplemental brief raising *Blakely*.

The Suggses' comparison to codefendant Price is inapt, because Price's appeal was argued in February, 2005, after the Supreme Court issued its opinion affirming the Court of Appeals' *Booker* decision. *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738,

14

160 L. Ed. 2d 621 (2005). This explains the *Paladino* remand in Price's case.[5] But the Suggses' appeal was decided *before* either the Court of Appeals' or Supreme Court's *Booker* decision. So, not only did their attorney not have those cases to rely on, as is explained immediately below, it was not unreasonable for him not to make a *Booker*-type argument because of *Blakely*.

As noted, *Blakely* was decided while the Suggses' appeal was pending, and the Suggses argue this makes their situation almost exactly like the defendant in *Ballard v. United States*, 400 F.3d 404 (6th Cir. 2005). In that case, the appellate court found that Ballard's counsel had rendered ineffective assistance on appeal by not making arguments based on *Apprendi*, which was decided while the appeal was pending. One of Ballard's codefendants did raise *Apprendi* and obtained relief. There is an important distinction from the present case, however. The underlying issue in *Ballard* was that Ballard's trial counsel (unlike her codefendant's) had not requested a special verdict to determine whether Ballard was responsible for transporting cocaine or marijuana, and it was impossible to determine with certainty from the evidence the ground on which the jury's verdict rested. Thus, both *Apprendi* and a Sixth Circuit case decided while Ballard's appeal was pending provided good issues to raise on appeal.

---

[5] It should be noted that on remand, this court indicated it would have given Price the same sentence even knowing the Guidelines were advisory, because of the strength and nature of the evidence. This suggests that the Suggses suffered no prejudice from not obtaining a *Paladino* remand.

In the present case, a special verdict form *was* used to obtain a jury decision beyond a reasonable doubt on drug type and quantity, and the jury's findings on the issues were supported by the evidence. Although *Blakely*, decided while the Suggses' appeals were pending, provided grounds for an argument that this still wasn't enough for Guidelines-sentencing purposes, there were equally good (or so it appeared at the time) arguments to think that *Blakely* did not impact the Guidelines unless the Supreme Court declared that to be the case in the *Booker* appeal, as explained by Judge Easterbrook's dissent in the *Booker* appellate decision. *Booker*, 375 F.3d at 516-20 (Easterbrook, J., dissenting). As a result, this court believes the Suggses' appellate counsel's belief that the Suggses should wait for the Supreme Court to decide *Booker* did not deviate so far from the standard of professional competence as to be an ineffective performance.

Finally, even were this court inclined to find that the Suggses' attorney should have raised *Blakely* and *Booker*, allowing them to do so now would amount to a retroactive application of *Booker*, which is prohibited by current precedent.[6] *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005); *see Smith,* 241 F.3d at 549 (assuming that § 2255 movant could establish counsel ineffective for not raising *Apprendi* issue,

---

[6] The court notes that Seantai, acting *pro se*, did file a motion to recall the mandate, which the Court of Appeals denied, but without prejudice to renewal, if appropriate, after the Supreme Court's decision in *Booker*. Appeal No. 03-1091, docket entry of October 5, 2004. It appears that Seantai has chosen not to avail himself of that opportunity.

16

potential non-retroactivity of *Apprendi* might bar relief anyway: "few constitutional arguments apply retroactively on collateral attack even if properly preserved"). For all of these reasons, the court does not believe that the Suggses can show the prejudice necessary to establish an ineffective-assistance claim with respect to their attorney's failure to raise or preserve a *Blakely/Booker* issue on appeal.

For the reasons given above, the Suggses' motions pursuant to § 2255 are summarily **DENIED**, and the associated civil cases **DISMISSED** pursuant to RULE 4 of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS. The clerk shall enter final judgment accordingly, and give immediate notice to both Seantai and Bobby Suggs.

**SO ORDERED.**

ENTER: April 13, 2006

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT